IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2019-009108-CA-01

ROAD SPACE MEDIA, LLC,

        Plaintiff,

    DATE: 4-16    TIME: 1155A

v.    INITIALS: C    ID#: 245

MIAMI-DADE COUNTY, FLORIDA,

        Defendant.

_____/

## SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of the State:

    YOU ARE COMMANDED to serve this summons and a copy of the Complaint in this

lawsuit on Defendant:

**Miami-Dade County, Florida**
**c/o MAYOR CARLOS A. GIMENEZ**
Stephen P. Clark Center
111 NW 1st Street
Miami, FL 33128
Ph: 305-375-5071

The defendant is required to serve written defenses to this Complaint on Plaintiffs' counsel:

E. ADAM WEBB*
GA Bar: 743910
**WEBB, KLASE & LEMOND, LLC**
1900 The Exchange, S.E., Ste. 480
Atlanta, GA 30339
(770) 444-0773
Adam@WebbLLC.com

*Pro Hac Vice* Application
to be submitted promptly

BRUCE S. ROGOW
TARA A. CAMPION
**BRUCE S. ROGOW, P.A.**
100 N.E. Third Ave. Ste. 1000
Fort Lauderdale, Florida 33301
PH: (954) 767-8909
Fax: (954) 764-1530
brogow@rogowlaw.com
tcampion@rogowlaw.com

1

within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiffs' attorney or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in this Complaint.


DATED on __4/9/2019__ _____, 2019.


(SEAL)

CLERK OF THE CIRCUIT COURT
Harvey Ruvin,
As Clerk of the Circuit Court

By:_____
       As Deputy Clerk

2

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. _____

ROAD SPACE MEDIA, LLC,

        Plaintiff,

v.

MIAMI-DADE COUNTY, FLORIDA,

        Defendant.

_____/

## COMPLAINT

Plaintiff Road Space Media, LLC files this Complaint against Defendant Miami-Dade County ("Miami-Dade" or just "the County"), a political subdivision of the State of Florida, and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      This is an action for declaratory judgment pursuant to Florida Statutes, Chapter 86 and damages that exceed $15,000.00, exclusive of interest, attorney's fees, and costs.

2.      Plaintiff Road Space Media, LLC ("Road Space") is a Florida limited liability company that specializes in developing and operating signs that are used by businesses, individuals, churches, charities, and public agencies to post commercial and noncommercial messages. Road Space's members have been in the sign business for decades. William Benham (hereinafter "Mr. Benham") is an authorized agent of Road Space who handled several aspects of this project as described below. Mr. Benham has also been in the sign business for decades.

3.    Defendant Miami-Dade County is a political subdivision of the State of Florida. In 2017, the County had a population of over 2.7 million people, making it the most populous county in Florida and the seventh-most populous county in the United States. It is also Florida's third largest county in terms of land area, with 1,946 square miles.

4.    This Court has jurisdiction because the properties where the proposed signs are to be located are all in Miami-Dade County. All conditions precedent to this cause of action have been performed, exercised, or otherwise satisfied. Notices required by Fla. R. Civ. P. 1.071(a) and (b) have been, or are being, provided to the appropriate recipients.

## STATEMENT OF THE CASE AND FACTS

5.    The owners of Road Space and Mr. Benham, on behalf of Road Space, have often visited the unincorporated areas of the County. They have determined that visitors and residents would benefit from more signage which would help local businesses and organizations notify the public of important information and events.

6.    Business owners, property owners, and County residents were enthusiastic about the prospect of additional signage. Road Space and Mr. Benham reached agreements to post new signs on several parcels in the County. The landowners stand to earn substantial income if a sign is posted on their property.

7.    For example, Road Space entered into an agreement with Public Storage, which authorized Road Space, or anyone acting on its behalf, to apply for any and all permits necessary for advertising signs on its properties. Road Space also entered into similar agreements with individual property owners that authorized advertising signs on their parcels.

8.    The properties where Road Space is pursuing signs are not residentially zoned and are adjacent to some of the County's most heavily trafficked roadways. They are suitable

2

properties for the proposed signs. The State of Florida and its Department of Transportation have adopted numerous laws and regulations of outdoor advertising. The signs proposed by Road Space are all located on appropriate commercial or industrial parcels pursuant to Florida law.

9.      For months, Road Space and Mr. Benham worked to gather all documentation and information required by the County Sign Code and application forms to apply for permits for the proposed signs. Plaintiff made sure that each application was complete pursuant to the County's Sign Code and Florida law. On August 9, 2018, Mr. Benham submitted 18 sign permit application packages to the County on behalf of Road Space.

10.     Mr. Benham was informed by the County that he would receive electronic notifications via e-mail regarding the status of the 18 applications. Over the next few weeks, Mr. Benham received a series of emails from the County informing him that the review of the applications that he had submitted was completed. He also viewed the County's e-permitting portal to determine what action had been taken by the County.

11.     Mr. Benham was able to determine that his applications had been denied. Although the applications were approved by the Structural and Building departments, they were denied based on provisions of the Sign Code. Each application was marked "A" for "Approved" by the "BLDG" and "STRU" departments but "D" for "Disapproved" by the "SIGN" department.

12.     In hopes of gaining a better understanding regarding the reasons why all 18 of the sign applications were denied and to inquire about the appeal procedure, representatives of Road Space placed phone calls to Jose L. Borbolla. Mr. Borbolla's name was shown as the person who marked "D" for "Disapproved" after performing his review pursuant to the Sign Code.

3

13.     Road Space's representatives attempted to contact Mr. Borbolla on both September 5, 2018 and September 11, 2018 to ask about the denials and inquire about the proper procedure for an appeal.  On each occasion messages were left for Mr. Borbolla but he did not respond.

14.     Therefore, on September 11, 2019, Road Space's legal counsel sent an appeal to Mr. Borbolla, Jack Osterholt (Deputy Mayor and Director of the Department of Regulatory and Economic Resources), and to the Community Zoning Appeals Board via e-mail and courier.  The appeal challenged the denial of Road Space's applications pursuant to Section 33-86(e) of the County's Sign Code.  The basis for the appeal was the same for all of the denials, namely that the Sign Code was manifestly unconstitutional in several fundamental respects.

15.     Road Space explained that it was submitting the appeal in this format because its research of the Sign Code and other County resources provided no other guidance and efforts to speak with someone in the Department of Regulatory and Economic Resources regarding the appeal process had been unsuccessful.

16.     Road Space's appeal also informed the County that if there were any specific appeal procedures that needed to be followed, forms that need to be submitted, or fees that needed to be paid in connection with the appeal, to let Road Space's legal counsel know immediately so such materials could be provided.

17.     On September 12, 2018, Road Space placed follow-up calls to Mr. Borbolla and Deputy Mayor Osterholt regarding the appeal but was unable to reach either individual.  On September 13, 2018, Mr. Borbolla contacted Road Space's legal counsel regarding the appeal.  Mr. Borbolla acknowledged receipt of the appeal.  He informed Road Space's legal counsel that they needed to speak with County official James Byers regarding the appeal.

4

18.     After speaking with Mr. Borbolla, Road Space called Mr. Byers on September 13 to discuss the appeal but was unable to reach him via telephone.  A message was left and a follow-up email was sent to Mr. Byers with a digital copy of the September 11 appeal.  Having not heard back from Mr. Byers by the following week, Road Space again tried to reach Mr. Byers via telephone on September 18 but was unsuccessful.  On September 26, 2018, Road Space's legal counsel was finally able to speak with Mr. Byers regarding the appeal.

19.     Mr. Byers had little substantive information to provide and instead informed Road Space that County official Nathan Kogon would be contacting them regarding the appeal.  After two additional weeks went by without hearing anything from Mr. Kogon or the County, Road Space's legal counsel left a message with Mr. Kogon's office on October 11, 2018.  The following day, the County finally contacted Road Space by leaving a voicemail message that acknowledged the appeal and stated that the County would be "providing written correspondence on the appeal application and process."

20.     Eventually, on October 29, 2018, Road Space's counsel received a letter from Mr. Kogon which stated that Road Space needed to complete an "Appeal of Administrative Decision" form for each sign site and that each application must be executed by the property owner of record.  This requirement might have made sense if a variance was being sought as to each sign or if the basis for appeal was different as to each proposed sign but Plaintiff's appeal is the same for all of the signs.[1]  Plaintiff merely points out that Miami-Dade's Sign Code is patently unconstitutional and unenforceable in the same manner as to all of the signs.

---

[1]     Variances are not available to Road Space under the Sign Code.  *E.g.*, Sign Code, §§ 33-96, 33-121.15.

5

21.     Even though Road Space had already provided the County with written authorization from the property owners that empowered Road Space to take all necessary steps to obtain permits for the signs, and the County's new requirements were not supported by any code provision, Road Space decided to comply with the requirements contained in Mr. Kogon's letter.

22.     Road Space worked with its landowners to gather the information requested by the "Appeal of Administrative Decision" form and to obtain an executed affidavit from each landowner. Road Space delivered 18 completed packets via courier on February 4, 2019. Mr. Kogon's letter did not indicate that any appeal fee was required, but the appeal form indicated that the appeal fee was $1,100.81, so Road Space submitted a check for $1,100.81. The County refused to accept this check.

23.     On February 6, 2019, Road Space's legal counsel received a voicemail message from Ronald Connally regarding the appeal documents. Mr. Connally stated that an appeal fee was required for each sign and that the County needed originals of all documents. Road Space returned Mr. Connally's call and left a message but Mr. Connally never returned the call.

24.     Subsequently, on February 22, 2019, Mr. Connally sent Road Space an email claiming that the appeal could not be accepted for the following *additional* reasons beyond those provided in his voicemail from February 6:

- The signature on the application affidavit does not match the name of the applicant.
- Each application affidavit must be signed by the aggrieved party, not by a representative on behalf of the aggrieved party.
- Each appeal application must provide information for the specific location of each sign being appealed.
- Each appeal application must include the legal description for each subject property.

6

- No power of attorney is provided authorizing the Regional Leasing Manager to execute the ownership affidavit on behalf of the owner.

- The letter referenced in the application forms provides no detail as to each individual permit at issue or any explanation as to why the denial of each permit was in error.

25.     Mr. Connally also demanded an initial appeal fee of $23,107.32 ($1283.74 for each sign) and stated that additional amounts would be owed as follows:

> In addition, the Zoning Code requires mailed notices to be sent on appeal applications to a specific distance radius from the address of the subject appeal application. The number of notices mailed are determined by the number of property owners located within the specific radius. An invoice will be sent to the applicant's representative and must be paid prior to the appeal being scheduled before a local community zoning appeals board.

26.     The reasons provided by Mr. Connally as to why Road Space's appeal purportedly could not be accepted are not based on the Sign Code. For example, the Sign Code and appeal form do not say that the application must be signed by the aggrieved party as opposed to an authorized representative or attorney. Mr. Kogon's October 19, 2018 letter did not say that the application could not be signed by an attorney. This is merely a pretext to delay or reject the appeal.

27.     Similarly, even though the Sign Code and appeal form do not say that originals must be submitted, and Mr. Kogon's October 19, 2018 letter did not say so, this requirement was created so the appeal can be delayed or rejected.

28.     As to some of the new requirements, the County refused to acknowledge that Plaintiff had provided the information. For example, each form provided the specific location of each sign. Likewise, even though Road Space provided specific detail as to why each denial was in error, Mr. Connally falsely claimed that this information was not provided. Since the appeal

7

was filed in September, the basis for the appeal (the fact that the Sign Code is unconstitutional in several fundamental respects) has been obvious. Once again, the County's new appeal requirements were concocted merely to reject or delay the appeal.

29. Finally, the County requested an appeal fee of $23,107.32 *plus* unknown administrative costs for sending notice of the appeal (to be billed separately at a later date). This fee, and the unknown amount of later fees, are patently unconstitutional and designed solely to thwart sign-related appeals.

30. The handling of Road Space's request for an appeal is entirely inconsistent with the County's own requirements as set out in the duly adopted code.

31. According to Section 33-86(e), Road Space's appeal was required to be heard "at the next regular meeting of such board after notice pursuant to the requirements of Section 33-310(c) of this code." Therefore, Road Space's appeal should have been heard in October of 2018, yet it is now March of 2019 and the County continues to impose new requirements. Discovery will show that no sign applicant has ever met all of the purported appeal requirements.

32. Such appeal procedures are manifestly unconstitutional and cannot be utilized to deny Road Space its opportunity to pursue legal remedies regarding the County's denial of its sign applications. Rather than continue to subject itself to this manifestly discretionary and unconstitutional appeal process before the County, Road Space turns to this Court for relief.

33. Beyond the unconstitutional appeal process utilized by the County, Miami-Dade also employs unconstitutional restrictions on signs. The County relied upon its unconstitutional Sign Code to deny Road Space's 18 sign applications.

34. The Sign Code begins with a list of definitions that define various "sign types" that are regulated in the County. *See* Sign Code, § 33-84 (defining terms). These "sign types"

8

are defined, in large part, based on the content of the message that will appear on the sign. For example, the Sign Code defines a "Class B (point of sale sign)" as "[a]ny sign advertising or designating the use, occupant of the premises, or merchandise and products sold on the premises, shall be deemed to be a point of sale sign (class B) and shall be located on the same premises whereon such is situated or the products sold." *See* Sign Code, § 33-84(g). Thus, to determine whether a sign is a point of sale sign, the County must know the content.

35.     As a further example, "Class C (commercial advertising sign)" is defined as:

> Any sign which is used for any purpose other than that of advertising to the public the legal or exact firm name of business or other activity carried on the premises, or for advertising any service or product or products actually and actively being offered for sale on the premises, or which is designed and displayed solely to offer for sale or rent the premises, or to advertise construction being done, or proposed to be done, on the premises, or to advertise special events, shall constitute a class C sign.

*Id.* at § 33-84(h). Thus, to determine whether a sign is a commercial advertising sign, the County must know the content of the sign.

36.     "Class A (temporary signs)" are defined as:

> Any sign(s) to be erected on a temporary basis, such as signs advertising the sale or rental of the premises on which located; signs advertising a subdivision of property; signs advertising construction actually being done on the premises on which the sign is located; signs advertising future construction to be done on the premises on which located, and special events, such as carnivals, concerts, public meetings, sporting events, political campaigns or events of a similar nature.

*Id.* at § 33-84(f). Once again, the County must know the content of the sign.

37.     A directional sign is defined as a "sign which guides or directs the public and contains no advertising. The name of the facility (such as store name), which the sign is giving direction to, may be included when specified conditions in the ordinance are complied with." *Id.*

at § 33-84(k). Thus, to determine whether a sign is directional, the County must know the content.

38.     There are numerous other examples.   These content-based definitions infect nearly every aspect of Miami-Dade's sign regulatory system.   Such content control by government officials violates free speech protections, but Miami-Dade County has chosen to defy clear decisions of the United States Supreme Court and Florida Supreme Court. The Sign Code specifically requires sign applicants to "fully advise and acquaint the issuing department with . . . the advertisement to be carried." *See* Sign Code, § 33-86(a). Based on such content, the sign is regulated in a certain manner, banned entirely, or exempted from permitting altogether.

39.     The content-based definitions are not Miami-Dade's only means on content control.  The code bans specific content.  For example, Section 33-87(2) provides:

> *Advertising conflicting with zoning rules.* No sign shall be erected or used to advertise any use or matter which would conflict with the regulations for the district in which it is located or be in conflict with the use permitted under the certificate of use or occupancy for the property.

This content restriction bans all of Road Space's proposed signs.  To illustrate, Plaintiff's signs on Public Storage property would not advertise storage facilities and thus the messages would "be in conflict with the use permitted" on the parcel.

40.     Plaintiff's signs would also be banned because the Sign Code bans all sign types that are not specifically allowed.  Sign Code, § 33-85 ("Only those signs that are specially authorized by this sign code shall be permitted. Those that are not listed or authorized shall be deemed prohibited").  Thus, the County has gotten free speech regulation entirely backwards, by banning all signs by default and allowing a few favored signs.  Because the content of Road

10

Space's proposed signs does not fit into any of Miami-Dade's categories, the default ban would apply.

41.     Section 33-94 exempts 17 different types of signs from even needing a permit. *All these exemptions are based on content.* For example, "traffic signs, provisional warnings and signs indicating danger" are exempt. *Id.* at § 33-94(b). "Flags and insignia of any government" are too. *Id.* at § 33-94(f). The County has freed itself from regulation by exempting "[l]egal notices, identification, information, or directional signs erected by or on behalf of governmental bodies." *Id.* at § 33-94(g). Since "information sign" is not defined, the County is truly free to install any sign – of any size, height, and location – that it chooses. Signs with content about "holidays" and "grand openings" are exempt. *Id.* at § 33-94(j), (l). If Road Space's proposed signs were deemed to fall into any of these exemptions, they would not even need a permit.

42.     Miami-Dade also prohibits several categories of signs based on their messages. For example, any sign with "lewd or lascivious matter" is banned. *Id.* at § 33-95(b). Of course, what is lewd is simply in the eye of the beholder. A swimsuit ad showing a bikini-clad woman is lewd to many Muslim or Amish viewers. A sign showing same-sex couples kissing is lewd to many conservative followers of several religions. Plaintiff's proposed signs would show messages that some County officials would consider "lewd or lascivious."

43.     Several fundamental sign types are banned for Plaintiff but not for other favored groups. "Pennants, banners, streamers, and . . . advertising devices are prohibited except for national flags, flags of bona fide civic, charitable, fraternal and welfare organizations." *Id.* at § 33-95(f). Road Space's proposed signs would arguably fall under this provision and be subject to this ban, in addition to the other prohibitions described above and below.

44.     The Sign Code also relies upon content-based "sign type" definitions when determining what illumination, size, and height are allowed in particular zoning districts. *Id.* at §§ 33-98 to -111. For example, in Section 33-99, five content-based sign types are regulated, such as "future construction signs" and "special events signs [which] include carnivals, concerts, public meetings, sports events, political campaigns, and other uses of a similar nature." These signs are regulated solely based on the message that will appear on the sign. These ads are favored over signs with certain content and treated less favorably than other messages.

45.     The same is true in Sections 33-100 through 33-111. In each instance, based on the content to be depicted on the sign, the regulations are established. Some content is more favored than others. Notably, signs of the same size and height as Road Space's proposed signs are allowed. Indeed, signs massively larger and taller are allowed at the discretion of officials.

46.     The County's permitting process fails to consider signs as a medium of speech activity. Despite clear and binding legal precedent, Miami-Dade continues to micromanage what its citizens, businesses, and organizations can say on signs. There has been no effort to make the regulations content-neutral.

47.     The County has also refused to follow constitutional norms as to sign permitting. As described above, those who want to post a sign must first request a permit. County officials are permitted to approve or deny signs based purely on their own discretion. Based on how they define a sign, or how they choose to interpret an exemption or ban, permits may be issued or rejected. The default position under the Sign Code is that all signs are presumptively banned. *Id.* at § 33-85 ("Only those signs that are specially authorized by this sign code shall be permitted. Those that are not listed or authorized shall be deemed prohibited.").

48.    As shown by Plaintiff's experience, signs can also be delayed if a County official does not favor an applicant.    At first glance the County appears to have a 30-day deadline to approve or deny an application.  *Id.* at § 33-86(e).  However, this deadline is illusory because, if the County fails to act within 30 days, the application is deemed automatically ***denied***, and then the burden shifts to the applicant to appeal.  *Id.*  As has been shown through the treatment of Plaintiff, there is no real time limit on the appeal process and it too is wholly discretionary.

## REQUESTS FOR RELIEF

### COUNT I
### THE COUNTY'S PERMITTING AND APPEAL MECHANISMS ARE UNCONSTITUTIONAL

49.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-48 above as if restated herein.

50.    Established precedent dictates that a permitting scheme "that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech," and therefore will not be tolerated. *Café Erotica of Fla., Inc. v. St. Johns County*, 360 F.3d 1274, 1283 (11th Cir. 2004) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 227 (1990)).  To satisfy this requirement, an ordinance should contain at least these two safeguards: (1) officials must be required to make prompt decisions; and (2) prompt judicial review must be available. *Café Erotica*, 360 F.3d at 1283.

51.    Miami-Dade officials are not required to make prompt decisions because, if the County fails to act within 30 days, applications are automatically ***denied***.  The County has turned the First Amendment on its head by making the default result of governmental inaction the denial of speech activity.  This failure to include a meaningful time limit is unconstitutional.

13

52. Second, the Sign Code also fails to ensure prompt judicial review. Plaintiff appealed the denial of its sign applications on September 11, 2018 and still has not been given a hearing date. For six months, Road Space diligently pursued an appeal, only to be rebuffed by the County based on ever-changing and discretionary criteria, lack of action, and unconstitutional fees.

53. The County's failure to ensure prompt review is unconstitutional. Whenever Miami-Dade officials do not favor a sign applicant or their messages, all they have to do is deny the permit or not respond, which results in an automatic denial. Then the denied applicant will find their appeal is subject to an endless series of changing requirements, including fees far higher than could ever be justified. Indeed, upon information and belief, no sign applicant has ever run the gauntlet of requirements that has been set up to stymie Road Space.

54. Plaintiff challenges the manifestly unconstitutional appeal process rather than subject itself to further whims of County officials. *E.g.*, *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1274-77 (11th Cir. 2006).

55. Pursuant to 42 U.S.C. § 1983 and Florida law, Plaintiff is entitled to compensation for the damages it has suffered as a result of the unconstitutional Sign Code and appeal mechanism and, pursuant to 42 U.S.C. § 1988 and Florida law, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert its and others' constitutional rights.

## COUNT II
## THE APPEAL MECHANISM IS OVERLY DISCRETIONARY

56. Plaintiff incorporates by reference the allegations contained in Paragraphs 1-48 above as if restated herein.

57.     Section 33-86(e) of the Sign Code requires applicants who have been denied a sign to appeal but the Sign Code contains no deadline by which the appeal process must be completed. Indeed, Plaintiff appealed over six months ago and has yet to even have a hearing scheduled. The County's latest stance is that several discretionary requirements must be met and over $23,000 must be paid to have the appeal heard. The process has been made up as Plaintiff moved through it. It might take months or years to navigate to the end. The lack of time limits is the ultimate discretion. *E.g.*, *U.S. v. Frandsen*, 212 F.3d 1231, 1239-40 (11th Cir. 2000) ("the ordinance's failure to require a specific deadline for a decision rendered it unconstitutional because it vested too much discretion in the zoning board as to when a decision would be made"); *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1363 (11th Cir. 1999).

58.     County officials – as evidenced by their handling of Plaintiff's appeal – also retain discretion to circumvent or alter the requirements of the Sign Code without regard to any enunciated standards or guidelines. None of the hurdles erected to stymie Road Space are set out in the Sign Code, they have been concocted pursuant to the whims of County officials. Such discretion is unconstitutional. *See Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150-51 (1969) ("a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional"); *Café Erotica*, 360 F.3d at 1284.

59.     Also, the Sign Code contains absolutely no standards or guidelines that the Appeals Board is supposed to follow when considering an appeal. Thus, County officials are granted limitless discretion in deciding whether an appeal will be granted or denied.

60.     In addition, pursuant to 42 U.S.C. § 1983 and Florida law, Plaintiff is entitled to compensation for the damages it has suffered as a result of the unconstitutional appeal

mechanism and, pursuant to 42 U.S.C. § 1988 and Florida law, reimbursement for all reasonable costs, including attorneys' fees, of bringing this suit to assert its and others' constitutional rights.

**COUNT III**
**THE APPEAL FEES ARE UNCONSTITUTIONAL**

61.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1-48 above as if restated herein.

62.     The County's appeal mechanism is also unconstitutional because the appeal fee of $23,107.32 ($1,283.74 per sign, even though there is only one appeal) *plus other unknown costs* is not tied to Miami-Dade's actual costs.

63.     The fee of $1,283.74 per sign is over and above the unknown amount of administrative costs for sending notice to neighboring property owners. Such administrative costs are billed separately to appellants at a later date. The exorbitant appeal fees have the result of chilling constitutionally protected speech. For example, someone who was denied a permit for a sign for a church bake sale is unlikely to pay the $1,283.74 required by the County to appeal such a denial. The same can be said for an infinite number of possible signs, most of which are not allowed in the County by right, are likely to be denied, and then certainly cannot be appealed due to the appeal cost far exceeding any reasonable amount.

64.     As the Supreme Court established in *Cox v. New Hampshire*, 312 U.S. 569 (1941), and *Murdock v. Pennsylvania*, 319 U.S. 105 (1943), government may charge a fee for speech activity but that fee may be no more than the amount needed to cover administrative costs. In Miami-Dade, the default is that all signs are banned and, indeed, if officials do not act, sign applications are automatically denied. Thus, appeals are more critical than under most sign codes, under which permits are deemed automatically granted after a short time. Where the default is denial, the appeal is an integral part of the sign permitting process.

65.     It is well established that government may not profit from the imposition of fees on the exercise of First Amendment rights. *Cox*, 312 U.S. at 577; *Murdock*, 319 U.S. at 113-14. Florida's courts have reaffirmed this rule of law repeatedly. *E.g.*, *Fly Fish, Inc. v. City of Cocoa Beach*, 337 F.3d 1301, 1313 (11th Cir. 2003); *Sentinel Communications Co. v. Watts*, 936 F.2d 1189, 1205 (11th Cir. 1991). In *Fly Fish*, the Eleventh Circuit noted that when First Amendment freedoms are made subject to a licensing scheme, only revenue-neutral fees may be imposed. In addition, it is the government's burden to demonstrate that its fee is reasonably related to recoupment of its costs. 337 F.3d at 1314.

66.     By imposing a $23,107.32 appeal fee, over and above the administrative costs incurred by the County, Miami-Dade is simply profiting from the exercise of speech rights. Sign applicants whose permits are delayed or denied generally do not appeal based on the fees. The appeal fees imposed by the County are unconstitutional and must be invalidated.

67.     Pursuant to 42 U.S.C. § 1983 and Florida law, Plaintiff is entitled to compensation for the damages it has suffered as a result of the County's unconstitutional appeal fee and, pursuant to 42 U.S.C. § 1988 and Florida law, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert its and others' constitutional rights.

## COUNT IV
## THE SIGN CODE IS UNCONSTITUTIONAL

68.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1-48 above as if restated herein.

69.     The County's rejection of all 18 sign applications based on the Sign Code was invalid because the code is unconstitutional for at least the following independently-sufficient reasons:

70.     <u>The Sign Code Is Content-Based and Fails Strict Scrutiny.</u>   In the decision of

*Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015), the Supreme Court held that

"[g]overnment regulation of speech is content-based if a law applies to particular speech because

of the topic discussed or the idea or message expressed." *Id.* at 2227 (citations omitted).  The

Court deemed this rule to be "commonsense" and requires a reviewing court to determine

whether a law "'on its face' draws distinctions based on the message a speaker conveys." *Id.*

71.     The Court reviewed the local sign law at issue and found that categories of signs

such as "temporary directional signs," "political signs," and "ideological signs" were defined and

regulated "entirely on the[ir] communicative content" and were thus content-based and subject to

strict scrutiny.  *Id.*  The Court then devoted several pages of its opinion to rejecting the rationales

of the lower courts for finding that the law was content-neutral.  *Id.* at 2227-31.  For instance, the

Court found that the government's motives in adopting the law are irrelevant if the law regulates

by content on its face.  *Id.* at 2228 ("Innocent motives do not eliminate the danger of censorship

presented by a facially content-based statute, as future government officials may one day wield

such statutes to suppress disfavored speech").  The Court also noted that "a speech regulation

targeted at specific subject matter is content-based even if it does not discriminate among

viewpoints within that subject matter." *Id.* at 2230.

72.     The Court then analyzed whether the content-based law could survive strict

scrutiny, "which requires the Government to prove that the restriction furthers a compelling

interest and is narrowly tailored to achieve that interest." *Id.* at 2231 (citations omitted).  The

Court held that the law could not survive strict scrutiny because, even if the town's interests in

traffic safety and aesthetics were considered compelling governmental interests, the code was

"hopelessly underinclusive." *Id.* (noting that signs bearing certain messages were "no greater an

eyesore" than other types of signs, as well as the lack of evidence that signs bearing some messages are more detrimental to traffic safety than signs conveying favored content).

73. The Sign Code and the invalid sign code at issue in *Reed* are materially indistinguishable. The Sign Code also repeatedly classifies and regulates signs based on their content. Literally dozens of its provisions are manifestly unconstitutional. It cannot survive strict scrutiny.

74. <u>The Wholesale Exemption for Government Signs Is Unconstitutional.</u> Section 33-94(g) of the County Sign Code wholly exempts Miami-Dade and all government agencies from all aspects of the Sign Code. The County can use this exemption to post huge signs that plainly do not meet the Sign Code. These signs can be much taller and larger than the signs sought by Plaintiff. The content, size, height, and other characteristics of these signs are unlimited.

75. Because Section 33-94(g) completely removes government-sponsored signs from the realm of required compliance with the regulations, the exemption is unconstitutional. *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1264 (11th Cir. 2005) (exemption from the substance of the zoning regulation for government signs created an impermissible content-based distinction). The fact that signs favored by the County are given favored speech rights is, of course, offensive on numerous levels. Most obviously, such exemptions for favored speech give government officials 100% discretion over what messages will be seen. This is not allowed. *E.g.*, *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755-56 (1988) (striking down law which provided mayor with unfettered discretion to determine whether newsracks were allowed). Further, the fact that such signs are allowed fatally undermines the

basis for imposing such restrictions on all others. Because such content-based and discretionary speech regulations are invalid, the Sign Code is unenforceable.

76. <u>The Sign Code Is Unduly Discretionary.</u>   Government discretion in speech permitting is allowed, if at all, only where constrained by precise and objective standards. *E.g.*, *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992) (such a scheme "may not delegate overly broad licensing discretion to a government official"). A law that "subjects the exercise of First Amendment freedoms to the prior restraint of a license without narrow, objective, and definite standards to guide the licensing authority is unconstitutional." *Café Erotica*, 360 F.3d at 1284-85. Here, the Sign Code grants unlawful discretion to officials in several obvious respects. First, the code affords officials wholesale discretion to permit signs bearing favored content. On the flip side, officials can deny any sign based on discretionary content-based prohibitions.

77. Second, the Sign Code gives the County the power to require compliance with various amorphous and unwritten requirements. This type of "catch all" provision in speech permitting schemes has been routinely invalidated. *E.g.*, *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1362 (11th Cir. 1999); *Miami Herald Publ'g Co. v. City of Hallandale*, 734 F.2d 666, 669 (11th Cir. 1984) (holding that requiring compliance with "all applicable provisions" of the city codes vested officials with unfettered discretion). As shown in this instance, County officials have used their discretion over sign permitting to stymie Plaintiff.

78. Third, the Sign Code lacks a real time limit on permitting. While the Sign Code contains a 30-day deadline, this deadline is illusory because if the County fails to act, the application is deemed automatically ***denied***, and then the burden shifts to the applicant to appeal. *See* Sign Code, § 33-86(e). As set out in detail above, the appeal process is potentially endless.

20

This lack of time limits, when coupled with the content-based nature of the code, renders the Sign Code unconstitutional. *E.g.*, *Solantic*, 410 F.3d at 1271.

79.     <u>The Sign Code's Default Ban on Signs Is Not Permitted.</u>  Miami-Dade is very clear that signs are presumptively banned unless expressly allowed in the Sign Code.  This is the opposite of the constitutionally required paradigm.  Governments must provide the basis for their speech restrictions and then restrict only such signs as would undermine legitimate purposes. Miami-Dade has it backwards.

80.     Because the aforementioned aspects of the Sign Code, and several others, are constitutionally invalid and inseparable from the remainder of the Sign Code, this Court should declare the Sign Code invalid in its entirety.  Because no valid regulation prohibited Plaintiff's proposed signs, the County should be ordered to allow the signs to be posted.

81.     Additionally, pursuant to 42 U.S.C. § 1983, Plaintiff is entitled to compensation for the damages it has suffered as a result of the County's enforcement of the unconstitutional Sign Code and, pursuant to 42 U.S.C. § 1988, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert its and others' constitutional rights.

**WHEREFORE,** Plaintiff Road Space Media, LLC prays:

(1)     For this Court to declare the County's appeal procedure and fees unconstitutional and enjoin its enforcement;

(2)     For this Court to declare the County's Sign Code unconstitutional;

(3)     For this Court to order Defendant to permit Plaintiff to erect the proposed signs;

(4)     For an award of actual and consequential damages resulting from the County's conduct in enforcing unconstitutional restrictions upon signs;

21

(5)    For an award of presumed and general damages to compensate Plaintiff for any damages it has suffered that are difficult or impossible to quantify;

(6)    For an award of at least nominal damages as a matter of law based upon the County's enforcement of unconstitutional sign restrictions;

(7)    For reimbursement of legal expenses, including reasonable attorneys' fees;

(8)    For a trial by jury on any issue not be resolved as a matter of law; and

(9)    For such other and further relief as the Court may deem just and equitable.

Dated this 25th day of March, 2019.

Respectfully Submitted,

E. ADAM WEBB*
GA Bar: 743910
**WEBB, KLASE & LEMOND, LLC**
1900 The Exchange, S.E., Ste. 480
Atlanta, GA 30339
(770) 444-0773
Adam@WebbLLC.com

*Pro Hac Vice* Application
to be submitted promptly

By: *Bruce S. Rogow*
BRUCE S. ROGOW
FL Bar: 067999
TARA A. CAMPION
FL Bar: 90944
**BRUCE S. ROGOW, P.A.**
100 N.E. 3rd Ave., Ste. 1000
Fort Lauderdale, FL  33301
Telephone: (954) 767-8909
brogow@rogowlaw.com
tcampion@rogowlaw.com

## CERTIFICATE OF SERVICE

I HEREBY certify the foregoing Complaint was filed electronically via e-Portal on this 25th day of March, 2019 and served, via registered U.S. mail, on the following individuals, pursuant to Fla. R. Civ. P. 1.071(a) and (b):

State Attorney for Miami-Dade County
**KATHERINE FERNANDEZ RUNDLE**
1350 N.W. 12th Avenue
Miami, FL 33136-2111
Ph: 305-547-0100

County Attorney for Miami-Dade County
**ABIGAIL PRICE-WILLIAMS**
111 SW 1st Street, Suite 2810
Miami, FL 33128
Ph: 305-375-5151

23